FELICIANO k/a GRACIANO LEDUC OCASIO, Appellant, *v.* THE REGISTRAR OF PROPERTY OF HUMACAO, Respondent.

No. 1308.   Submitted April 7, 1954.—Decided December 28, 1954.

*Francisco González, Jr.,* and *Cruz Ortiz Stella* for appellant. The registrar appeared by brief.

MR. JUSTICE MARRERO delivered the opinion of the Court.

By public deed executed in Humacao on October 21, 1953, appellant acquired from Teodoro Aguilar Mora a small lot situated in the ward of Río Abajo of that municipality, for the sum of $300.   It was stated in the first clause thereof:

"That Teodoro Aguilar y Mora is the sole owner and in fee simple of the following property:

"Urban: Parcel of land situated in the ward of Río Abajo, jurisdiction of Humacao, in the outskirts of this town, consisting of 2,360 square meters of flat land to be used as lots, measuring 20 linear meters on the north where it is bounded by lands of Ponce de León School; 20 meters on the south, bounded by a dirt road leading from the said town of Humacao to the river and the properties of Ramón Fulladosa, María Rodríguez de Bustelo, and Antonio Aguilar; 118 linear meters on the

east, bounded by lands of Ponce de León School; and 118 meters on the west, bounded by a strip of land 10 meters wide which is a part of Concepción Cabrera's main property, now known as Ponce de León Street, which strip is now devoted to public traffic. Several lots have been segregated from this parcel and sold to different persons, as a result of which its area has been reduced to 240 square meters, namely, 12 meters along the front or west, which is bounded by the street where it is situated; 12 meters on the rear or east, bounded by lands of the school, rather Ponce de León School; 20 meters on the right, or south as you enter, bounded by a lot which was segregated from this property belonging at present to Resurrección Pastrana; and 20 meters on the left, or north as you enter, bounded by another lot which was segregated from this property belonging at present to Isidra, known as Dora Cardona.

"Recorded at folio 135, reverse, volume 61 of Humacao, property No. 2,020, second inscription."

Upon presentation of the deed to the Registry of Property for registration, the registrar recorded the sale "setting forth the curable defect that this document does not state the total area segregated from the property in order to determine the area of the remaining portion." The purchaser appealed to this Court from that decision.

■■ The registrar relied mainly on *Ruiz* v. *Torres*, 61 P.R.R. 1. He now contends in his brief that:

"We wish to state that, upon examining the document which is the object of the CURABLE DEFECT and realizing that no mention was made of the segregations, we noticed immediately that there was a marked difference between the segregations recorded in the Registry and the portion offered for sale as the remainder of the property, which led us to believe that this may lead to future discrepancies, and we are going to explain why... Let us imagine that other sales have been made, also from the main property, which are not recorded in the Registry because the deeds have not been presented for registration. Upon recording the remaining 240 meters without mentioning the total of the segregations, it is likely that when they are presented for registration there will only remain a part of the balance to be recorded, thereby creating a more serious situation. ".

"As may be seen from the attached certificate of the facts appearing from the Registry, which we respectfully submit to this Hon. Court as a part hereof, the main property consisted of 2,360 square meters, from which there appears to have been segregated to this date 1,817 square meters (8 lots), leaving a balance of 543 square meters according to the Registry. Is there not a discrepancy between what is stated in the document—that the balance is 240 meters—and what actually appears from the Registry?"

The registrar is in error. The deed presented clearly sets forth the area of the main property with its boundaries by the four cardinal points, as well as the total area of the segregated lot, with its dimensions and boundaries on the north, south, east, and west. *Cf. Municipality* v. *Registrar*, 52 P.R.R. 76, 77; *Rosado* v. *Registrar*, 68 P.R.R. 552, 556. It is also stated in that deed that several lots were segregated from the main property, as a result of which it has been reduced to 240 meters, and that this is the balance which is being sold. For registration purposes, that was sufficient. It was not necessary to state or describe specifically each and all of the segregations made from the main property prior thereto. The fact that, according to the registry, the unrecorded balance of the main property was greater than the lot sold to appellant, is unimportant. The logical assumption, in a case such as this, was that the difference between the area appearing from the registry and the area of the lot acquired by appellant had been previously sold to another person, and that that person had not as yet recorded his title. This can in nowise prejudice the acquirer's rights.

In *Ruiz* v. *Torres, supra,* Vidal Montalvo had a 62.50 cuerda estate recorded in his name in the Registry of Property of Utuado. By five different deeds he segregated and sold from said property six lots of 18, 9, 3, 3, 7, and 13.50 cuerdas respectively, the main estate being thus reduced to an area of nine cuerdas. On the same date on which those segregations were made, Montalvo Rodríguez executed a deed of

sale in favor of Ruiz, appellant therein, for the purpose of selling to him the nine cuerdas he still had of the original estate of 62.50 cuerdas. The property, which was the object of the sale, is described in that deed by its different cardinal points. Upon presentation of said deed in the registry, registration was denied "because it fails to describe the main property from which it is said the nine-acre (cuerdas) estate . . . is a remainder." In the opinion rendered we affirmed the decision appealed from, and, after indicating that the segregations had been recorded as separate estates of the respective buyers, we stated that "In the instant case we are not dealing with a new segregation but with the sale of the remaining portion of estate number 7,521, the area of which was reduced to nine acres. The description made in the deed of the property, the subject of the sale, does not correspond with the one that appears in the registry of estate number 7,521. There is no nine-acre estate with the boundaries stated in the deed recorded in the name of the vendor."

However, the *Ruiz* case, *supra*, was expressly overruled by *Piñeiro* v. *Registrar*, 75 P.R.R. 427. In the latter case we stated: ". . . we understand that the doctrine laid down in *Ruiz* v. *Torres*, *supra*, is inconsistent with the ruling established in the subsequent case of *Rosado* v. *Registrar*, *supra*, and that the former case should be overruled." However, a further study of the matter convinces us that the Court was not justified in overruling said case, since *Ruiz* v. *Torres*, was rightly decided and was clearly distinguishable from *Rosado* v. *Registrar*.

We are already acquainted with the facts in *Ruiz* v. *Torres*, as well as the manner in which the matter was decided by this Court. Let us turn to the *Rosado* case, *supra*. There the spouses García-Carreras purchased a property containing 195.99 cuerdas, part of which was situated within Trujillo Alto, which at that time belonged to the Registry of Property of San Juan, and part in Caguas within the

jurisdiction of the Registry of Property of the same name. From this property the said spouses segregated and sold to Felipe S. Vidal 97.995 cuerdas, of which 68.995 were lying in Caguas and the remainder in Trujillo Alto. Both deeds were recorded in the Registry of Property of Caguas and of San Juan without setting forth the boundaries of the portion corresponding to each registry. Subsequently, Felipe S. Vidal consolidated the property purchased by him from the García spouses and another belonging to him situated in Caguas, thereby forming a single property of 123.145 cuerdas. In the same deed of consolidation Vidal sold the aforesaid property to Rosado Fussá, appellant therein. Upon the presentation of the deed of purchase to the registry, the Registrar of Caguas recorded it, but when it was presented to the Registry of Property of Río Piedras, to which the town of Trujillo Alto now belongs, the registrar recorded the same "with the curable defect that it did not describe the portion of the property lying within the municipality of Trujillo Alto." We held that, pursuant to the Mortgage Law, "deeds subject to record in connection with properties situated within the territorial districts of two or more registries, must set forth the area and boundaries of the portions lying within each registry," and that "the lack of boundaries is not sufficient reason to deny recordation, since such a lack is a curable defect." The *Rosado* case did not therefore overrule the *Ruiz* case. The facts involved in each were entirely different. In the *Ruiz* case, we repeat, the remaining portion of a property was sold but the main property was not described in the deed of sale. Thus, the registrar acted correctly in that case in denying registration of the remaining portion. However, the *Rosado* case dealt, as has been seen, with a consolidated property, part of which lay within the jurisdiction of one registry and part within the jurisdiction of another registry. Since the deed did not set forth the area and the boundaries of the portion lying within each reg-

istry, we held that registration with a curable defect was in order.

On the other hand, in *Piñeiro* v. *Registrar, supra*, a deed of sale of a property lying in the ward of Sabana Llana of the municipal district of Río Piedras was presented in the Registry of Property of Río Piedras for registration. It was set forth in the deed that the property which was the object of the sale was the remainder of a series of segregations made from the main property of 1.10 cuerdas. The main property and its boundaries were described in the deed "but not the boundaries of the remaining property the object of the sale." The registrar denied registration and entered instead a cautionary notice. Such action of the registrar was erroneous, since, according to the previous holding in *Rosado* v. *Registrar, supra*, "the lack of boundaries is not sufficient reason to deny recordation, since such a lack is a curable defect." The *Piñeiro* case could have therefore relied solely on what was said previously in the *Rosado* case, causing, by virtue thereof, the reversal of the registrar's note, and ordering him to record the deed with a curable defect.

This Court, however, went too far in *Ruiz* v. *Torres*, stating at p. 3 that: "The most common and advisable practice to be followed is to describe the original estate just as it appears from the registry; *to state the segregations that have been made in order that the exact area to which the property has been reduced can be determined;* and, then, to sell the remaining portion of the estate stating its boundaries." (Italics ours.) We say that we went too far in so stating because, as we shall presently see, when several segregations are made from the main property and the remainder is finally sold, it is not then necessary "to state the segregations that have been made." That is precisely the question involved in this appeal.

According to § 65 of the Mortgage Law, as amended by Act No. 20 of July 9, 1936 (Spec. Sess. Laws, p. 152):

"Curable defects shall be those which affect the validity of an instrument without necessarily producing the nullity of the obligation therein constituted."

We are at a loss to understand why the non-specification of the area of the different segregations made may affect the validity of the title when the remainder of the main property is alienated. Such title is wholly valid and, as respects the sale of the remainder, the same is recorded as a separate property title.

In volume 2, pp. 123–127, of his textbook on *Derecho Hipotecario*, textwriter Roca Sastre states that the segregation of mortgage entities "consists in the *separation* of a part of an unrecorded property to form by itself a single independent property"; and that "the segregation...gives rise to a new mortgage entity." This action, however, does not deal with a segregation. Neither does it deal with the division or partition of the main property. Such division or partition, according to Roca Sastre (pp. 127, 128), "takes place when the totality of an unrecorded property *is divided into two or more lots or portions*... As to the requirements for the division, it is necessary to describe in the proper deed all the different parcels into which the property is divided, since all of them become new properties, no recorded remainder being left from the original property." It cannot be argued here that a division or partition of the property has been made. It is clear that we are concerned with a main property from which several segregations have subsequently been made, and of which the remainder, which is the object of the registration involved in this appeal, is finally sold.[1]

The no less learned textwriter, Morell y Terry, states at p. 91, vol. 2, 2d ed. of his *Comentarios a la Legislación Hipotecaria*, that:

---

[1] By a recent amendment in Spain, a description is now required of the remaining portion of the main property from which the segregation is made.

"When several portions of land are alienated from a certain property, as separate parcels and with different boundaries, they should be considered as separate properties."

And that:

"...the portion of land remaining from a property, from which several segregations have been made, constitutes a property." (Italics ours.)

In that line of reasoning, we can assert that the remainder of the main property which Aguilar y Mora sold to appellant in the instant case was a separate property. Since it (the remainder) was described by its four cardinal points, and since the main property was also described by its four cardinal points, besides setting forth the area of each, the proper action was to record the property sold without any defect whatever. In this connection, see Morell, *op. cit.*, Appendix to vol. 1, pp. 237–240, as well as Casso Romero, *Derecho Hipotecario o del Registro de la Propiedad,* 4th ed. (1951), p. 246.

■ Before closing, we will say that, in passing upon a deed, the registrar is bound to consider only what appears from the face of such instrument, and he is under no duty to examine previous records in the registry or to consider other instruments not supplementary to that sought to be recorded. Sections 18 of the Mortgage Law and 77 of the Regulations; *Heirs of Collazo* v. *Registrar*, 41 P.R.R. 575, 577.

The registrar's note will be reversed and the deed recorded without any defect.

Mr. Justice Sifre agrees with the result.

----

MR. JUSTICE NEGRÓN FERNÁNDEZ, dissenting.

The alienation of the remainder of a property, after segregating several portions therefrom, does not constitute a segregation but the sale of the main property—which unit has its own registral personality. What Teodoro Aguilar

Mora sold to appellant herein was the registral unit appearing in his name in the registry, the area of which, as set forth in the recorded title, was reduced by the area of the previous segregations entered on the margin of the record. According to those marginal entries, the recordable area was 543 square meters on the date the deed in question was presented. Aguilar Mora was not segregating and selling 240 meters of the property, according to its registral area. He was selling the property itself. After describing in the deed the original boundaries of the property he merely added that "several lots have been segregated from said parcel and sold to different persons, as a result of which its area was reduced to 240 square meters." The registrar considered that the difference between the area stated in the deed presented for registration—sale of the *remainder* of the main property—and the registral area, was a curable defect and thus set it forth *when recording* the title in favor of the purchaser. I believe the registrar acted correctly.

The properties constitute the only basic unit of registration. They are determined (*a*) by their nature, (*b*) by their location, (*c*) by their boundaries, and (*d*) by their area, under § 9(1) of the Mortgage Law. 2 Dorta Duque, *Curso de Legislación Hipotecaria*, pp. 262 and 263. The area is therefore one of the elements for determining a real property. By decision of March 21, 1913, as cited in Medina y Marañón, *Leyes Civiles de España*, note 3 of the portion bearing on the Mortgage Law, p. 10, the General Directorate of Registries has held that "the property is not determined by stating in the deed of sale that a certain portion had been segregated therefrom, *without stating the number of meters.*" The same view is expressed by Morell y Terry in his *Comentarios a la Legislación Hipotecaria*, vol. 2, p. 103, when he says: ". . . where in view of previous errors in the survey the area assigned to the property in the title is less than that appearing in the record, there is no difficulty in record-

ing the same once its identity is determined, *and if the difference is due to the previous segregation or separation of part of the area, such fact must be set forth in the title and in the record indicating the extent of the segregated portion.*" The lack of any of the requisites listed in any of the subdivisions of § 9 of the Mortgage Law is a curable defect. *Rosado* v. *Registrar,* 68 P.R.R. 552. The same is true in case of inaccuracy, whenever it is not material. Section 32, in relation to §§ 30 and 9 of the Act.

Referring to the area of the properties for the purposes of their determination, says Morell at p. 104 of his text and volume cited:

"Each property represents a fraction, a fragment of the entire piece of real property existing in a country. That portion is indicated by the area. The nature, location, boundaries, and other special circumstances will indicate the place or point where it stands within the area, its shape, and outline; but, in short, nothing which by itself is sufficient for its determination. With the same shape and boundaries, and in the same place, the property may consist of one or of one hundred hectares. A very essential element is lacking where the area is not stated."

And at p. 107:

"In any event, the Registrar must determine the differences in area appearing in the Registry and in the documents, provided it affects the identity of the property or the extent of the right, as stated in the Decision of October 18, 1911. Furthermore, if the difference in the former case is due to survey errors and it is of slight importance, there is no problem in recording stating the difference in the entry, and with greater reason if the area given was only approximate, as admitted in the Decisions of November 9, 1877, July 8, 1878, and March 8, 1898; and where the area given is only approximate, the Decision of May 21, 1881. If the difference is significant, the document cannot be recorded until the acquisition of what is lacking is justified, as stated in the Decisions of March 14, 1876, September 7, 1880, November 22, 1893, October 27, 1894, and March 20, 1901."

The case of *Ruiz* v. *Torres*, 61 P.R.R. 1, was correctly decided. As in that case, we are not dealing here with a *new segregation* but the sale of the remainder of the property which consisted originally of 2,360 square meters, which area, according to the registry, had been reduced to 543 square meters. The area of the remainder which is described in the deed of sale involved in this appeal does not correspond to the registral area to which the original property was reduced by the segregations entered on the margin.

The juridical problem under consideration cannot be treated in the light of the principles, correctly announced in the opinion of the Court, which govern segregation cases, which is what is actually done in that opinion. In view of the fact that the deed of sale did not state the number of meters segregated from the main property, and since the area recorded in the registry does not agree with the area shown in the deed, the registration of the whole remainder was correctly made when the registrar classified said document as one with the *curable* defect that it failed to set forth in meters all the previous segregations.

In my judgment, the decision appealed from should be affirmed.